3 U.S. 344
 3 Dall. 344
 1 L.Ed. 629
 Brown
v.
Van Braam.
 August Term, 1797
 
 1
 Error from the Circuit Court, for the District of Rhode Island. The case was as follows: On the 10th of March, 1792, Brown and Francis, merchants, of Providence, in Rhode Island, drew four sets of bills of exchange on Thomas Dickason and Co. merchants, of London, payable at 365 days sight, to Benjamin Page, or order, for the aggregate sum of L. 3000 sterling. Page being at Canton on the 28th of March, 1793, endorsed these bills to Van Braam, the Defendant in error, and on the same day, as the agent of Brown and Francis, drew another set of bills of exchange, upon Thomas Dickason and Co. payable, also, at 365 days sight, to Van Braam, or order, for L. 3000 sterling. 3N the 9th of April, 1793, Page, in the same character of agent, drew a similar set of bills, in favor of Van Braam, or order, for L. 400 sterling. 3Ne bill of each set was presented to Thomas Dickason and Co. in London, for acceptance, on the 31st of December, 1793, but were then protested for non-acceptance, of which Brown and Francis had notice on the 1st of July, 1794, though the bills and protests were not actually returned to them. The bills were again presented for payment on the 15th of January, 1795, (that is 10 days after they were actually due) and protested for non-payment, of which Brown and Francis had notice on the 1st of Paril, 1795. This action was instituted in the Circuit Court of November Term, 1796, to recover the amount of the protested bills, with interest, damages and charges; and the declaration contained a special count on each bill, together with a general indebitatus assumpsit for 40,000 dollars, money had and received by the Defendants, to the use of the Plaintiff. On the return of the record it appeared, that Francis had died subsequent to the service of the original writ; that Brown came into court, and, after suggesting the death of Francis, pleaded the general issue; and that the Plaintiff having, likewise, suggested the death of Francis 'prayed judgment against John Brown, the surviving Defendant.' There was no joinder in issue, continuance, or other pleading; but immediately after the above prayer for judgment, the record proceeds, in this form: 'And the said John Brown made default: Whereupon, this cause being submitted to the court, and the court having fully heard the parties by their counsel, and mature deliberation being thereon had, it is considered by the court now here, that the said Andreal E. Van Braam Houchgeest, do recover against the said John Brown, the surviving partner as aforesaid, the sum of thirty four thousand four hundred and fifty five dollars, and twenty seven cents damages, and costs of suit, taxed at sixteen dollars and fifty two cents.' To the record of this judgment, the following memorandum was annexed: 'Nota Bene. The above sum, as ordered by the court, includes the principal and interest from the 15th January, 1795, to the 19th November, 1796, and ten per cent damages, and twenty nine dollars, and twenty two cents, charges of protest.'
 
 
 2
 Upon this record the following errors were assigned, and argued by Howell and Robbins, of Rhode Island, and Dexter, of Massachusetts, for the Plaintiff in error, and by Barnes, of Rhode Island, and Mifflin, of Pennsylvania, for the Defendant in error.
 
 
 3
 1st. That after plea pleaded, there was a discontinuance of the cause in the court below, and, therefore, no judgment could be rendered.
 
 
 4
 2nd. That 10 per cent. damages, and 6 per cent. interest, are included in the judgment, where no damages at all ought to have been given.
 
 
 5
 3rd. That the court assessed the damages, when they ought to have been assessed by a jury.
 
 
 6
 For the Plaintiff in Error. 1st Error assigned: It appears from the record, that there was a discontinuance of the cause, by an omission of the Plaintiff below, and no verdict or judgment can cure the defect. The Defendant had come in, and tendered an issue upon every count in the declaration; and, without a joinder of issue, or any species of replication, the suggestion of the death of Francis, is the only thing that occurs between the Defendant's plea, thus traversing the whole cause of action, and the judgment against him by default. It does not appear, that the Plaintiff himself was in court; nor, indeed, under all the circumstances of the record can it be conclusively ascertained, for whom judgment ought to have been given. It is true, that by the courtesy of the bar, the similiter might, perhaps, have been entered at any time, while the cause was depending in the original jurisdiction; but till it was entered, the Defendant by pleading had done everything that law or reason could exact from him; and it is too late to enter it, when the cause is removed upon a writ of error. In deciding on this exception, the Court will be governed by the law of Rhode Island, by virtue of the reference made in the thirty fourth section of the Judicial Act, to the laws of the several States, as rules of decision in trials at common law, in the Courts of the United States, where they apply. But the law of Rhode Island must not be construed to recognize any loose system of practice, introduced upon the principles of mutual indulgence for the personal accommodation of attornies. By an act of the state it is declared, that in all cases, for which the Legislature has made no positive provision, the laws of England shall furnish the rule of decision. If, therefore, any custom, usage, or practice, shall be in opposition to an express statute of Rhode Island; or where there is no statute on the subject, if it shall oppugn the principles of the common law of England, it is void, and ought to be disregarded. In the present instance, there is no express statute; but the discontinuance is fatal at common law; and, therefore, fatal by the law of Rhode Island. There can be no judgment by default, after an appearance, much less after pleading; but the Plaintiff should have entered the similiter, and then he would have been entitled to make out his case before a jury, whether the defendant attended, or not, to support his plea. As the record stands it cannot be understood what was tried, an issue in fact, or a demurrer in lawa
 
 
 7
 2nd. Error assigned. By the law of Rhode Island,b it is declared, 'that when any bill or bills of exchange shall be returned from any parts beyond sea, duly protested for nonacceptance, or non-payment, the person or persons to whom the same was (or were) payable, shall be entitled to have and recover of the drawer or drawers, endorser or endorsers of the bill or bills of exchange, ten per cent damages, over and above the principal sum, for which such protested bill, or bills of exchange so protested, was or were drawn, and also lawful interest from the time such bill or bills of exchange so protested, were purchased, until final judgment for the same be obtained, and also legal charges of protesting said
 
 
 
 a
 Paterson, Justice. I shall certainly consider myself bound in some cases, by the practice of the State Courts; and, therefore, I wish to get a practical exposition of the statute, to ascertain whether the judgment by default can be considered as good for nothing, after there has been such a discontinuance as the present.
 
 
 
 8
 Chase, Justice. I shall be governed, in forming my opinion, by what the common law says must be the effect of a judgment by default; without regarding the practice of the State. If, indeed, the practice of the several States were, in every case, to be adopted, we should be involved in an endless labyrinth of false constructions, and idle forms.
 
 
 
 b
 'An act for ascertaining damages upon protested bills of exchange,' originally payed in the year 1743, but included in the revised Code of Rhode Island Law (1776) page 19.
 
 
 
 9
 'bill (or bills) with costs of suit.' It is agreed, that, under this law, damages might have been recovered upon the protest for non-acceptance merely; but then the bills and protest for non-acceptance, must have been returned in a reasonable time; whereas they were not returned till a year had elapsed; the bills were protested for non-payment; and in point of fact, it is conceded, that the action is brought upon the protest for non-payment, and not upon the protest for non-acceptance. The notice of the non-acceptance will not alter the case; for the bills with the protest should have been returned to the drawers, so as to put it in their power to take them up, and to pursue their remedy over against the drawee, in case he had their affects in his hands at the time of protest. Then considering the case upon the protest for non-payment, no damages ought to be allowed, unless the bills were duly protested; and it appears, from the Plaintiff's own shewing, that they were not protested for ten days after they had become payable, which is not so soon as it might have been from the nature of the case, or as it ought to have been according to the law of merchants, by which only three days grace are allowed. It is true, that this protest may be in time for one purpose at common law, for instance, to maintain an action against the drawer, who had no assets in the hands of the drawee, at the time of protest; and yet the bills shall not be deemed duly protested for another purpose, by statute, for instance, to entitle the payee to recover damages.
 
 
 10
 It will be urged, however, that the allowance of damages, only appears by the nota bene subjoined to the judgment of the court below, and that this ought not to be taken into consideration as a part of the record. But what constitutes a record, is a very different thing, in different states. The mode of stating the judgment, or the reasons for it, will, likewise, admit of great latitude and diversity. If the purport of the nota bene had been incorporated with the judgment, there would have been no ground for cavil; and where is the substantial difference, whether the judge delivers the explanation himself, or directs it (which, for aught that appears, may be the fact) to be entered by the clerk? If the court had confined its view to the mere formal part of the record in the case of Bingham Plaintiff in error versus Cabot, (ant. p. 19.) the ground of reversing the judgment below could never have appeared; and if the nota bene is reversed here, it cannot be determined what has been tried by the court below. But, after all, the allowance of damages must necessarily be inferred from the record, independent of the nota bene. Thus, the declaration sets forth and demands the principal interest, cost and damages, accruing by virtue of certain bills of exchange; and the demand being reducible to certainty by figures, this court can follow the court below, and by mere calculation, from data existing on the record, correct any error that has been committed. Since, then, there is a judgment for more than the principal, interest, and costs upon the bills of exchange, the surplus must be error; and the nota bene only serves to explain how that surplus has arisen.
 
 
 11
 3rd. Error assigned. The damages ought not to have been assessed by the court. It is admitted, that where a demand appears to a certainty upon the record, or may be reduced to a certainty by the use of figures, the court may itself make the calculation, or refer it to the proper officer to be done. 3 Leon. 213. 1 Hen. Black 541. If, therefore, the declaration had demanded nothing more than appears on the face of the bills, the present exception could not prevail; because the specific sum to be adjudged might be conclusively ascertained by adding, upon a simple process of figures, the amount of the interest to the principal; though even that doctrine has been controverted in a very recent case. 4. T. Rep. 275. But the demand is not only for the principal and interest, but, likewise, for damages, which are altogether uncertain; depending upon the fact, that the bills have been returned duly protested; and that fact involving a complicated investigation into the period of the return, as well as into the time and mode of protest. Even, indeed, with respect to the interest, a similar uncertainty arises under the provision of the Rhode Island law; since interest is to be allowed from the time of purchasing the bills; and, therefore, the time of purchasing the bills was a fact to be ascertained, before any calculation could be made. But exclusive of these points, necessarily connected with the bills, the Defendant under the general issue, which he had tendered, was entitled to bring a great variety of matters into his defence. As there is much diversity in the laws on this subject, some allowing 20 per cent. others only 10 per cent damages, and some no specific damages at all, the place of drawing the bills may be material. Nor can it be said, that the judgment by default, even if it had been regularly entered, would admit all that is demanded in the declaration; it admits the cause of action as stated, but does not admit the quantum of the demand. The Defendant might, therefore, have shown an endorsement after the bills were dishonored, and a subsequent payment, on the principle laid down in Term Report, 82. for, an endorsement in such case is not conclusive against the drawer. 12. Mod.
 
 
 12
 It is not contended, that, under the principles of the English law, or the usage of New England, the form of a writ of enquiry is indispensable, to ascertain damages upon every judgment by default; but wherever matters of fact can be separated from matters of law, it will be agreed to be a general and favorite practice, to allot the assessment of damages to a jury. The ancient authorities are, it is true, exceedingly crude in relation to the distribution of jurisdiction between judges and juries; but we have received the doctrine in its modern, perfect, and as such, are deeply interested in adhering to it. So forcible is the modern example of the English courts, that the judges have refused even to value foreign money; 4 T. Rep. 493; and a motion for referring a bill of exchange, drawn for Irish sterling, to the matter, in order to see what was due, for principal interest and costs, has been recently rejected in Westminster Hall. 5 T. Rep. 87. It is here, indeed, to be remarked, that the bills of exchange, in the present instance, were drawn for British sterling money; which is, surely, as much to be denominated foreign money in an American court, as Irish sterling can be so denominated in an English court.* Besides, it is to be considered, that in England damages are compensatory; while in Rhode Island, in most of the other states in the Union, and in many foreign countries, damages are in the nature of a penal sum, given by statute; and not a solitary authority can be produced, where any court has referred a bill of exchange to the Prothonotary, to add by way of damages, any sum beyond the precise computation of interest.
 
 
 13
 The doctrine having, then, been thus settled in England, the question arises, whether the statutes of Rhode Island have made any difference in the common law? By the act, regulating the proceedings in the courts of that State (page 59.) it is provided, 'That in all cases, both at the inferior and superior courts, where judgment shall pass by default, discontinuance, nihil dicit, non sum informatus, or demurrer, where damages are to be enquired into and assessed, damages shall be enquired into and assessed by the court, or otherwise, by a writ of enquiry, at the descretion of the courts.' This provision may be regarded in two points of view; 1st, Considering it, upon the ground of the opposite construction, whether it furnishes a rule for the Federal Courts, from which they can derive any new authority; and 2nd. Considering it, upon the ground of our construction, whether the assessment of the damages ought not to have been referred to a jury. 1st. On the first of these grounds of consideration, there is no key to an explanation, but the act of Congress; which declares that the laws of the several States, except where the Constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply.' Now, though this is an adoption of the laws of Rhode Island, where they apply, it cannot be considered as a recognition of all the modes of practice, which may have been introduced to determine the rights of a party; compelling the Federal Courts, whatever may be the extravagance of those modes, to be in all respects as erratic as the courts of the States. For instance; though where the State law regulates the descent of real property, the Circuit Court must decide conformably to the lex loci; yet if the State Legislature had instituted the ordeal, or trial by battle, to ascertain who was the right heir, the Judges of the Circuit Court would not, surely, erect themselves into such a tribunal, and preside at such a mockery. If the Federal Courts should attempt to alter the fundamental laws of descent, the citizens of Massachusetts, or Rhode Island, would have reason to complain, and the complaint would certainly be heard; but if, disdaining to sanctify the errors of clerks, and the blunders of yearlings (to whom too often the business of keeping and making up a record is confided) the Federal Courts should discountenance and reject the errors and irregularities of the practice of the State Courts, every suitor would gratefully acknowledge the obligation. There is, perhaps, occasion to lament, that errors in jurisprudence have too long kept the citizens of the Eastern States in darkness, ignorant of their rights and duties; and it is one of the beneficial consequences, that may be fairly expected from the establishment of the national government, that such amendments will every where be introduced into the practice of the law, as are confident with substantial justice, legislative acts, and ancient usages, approved by experience, or favored by local peculiarities. Take the law and practice of Rhode Island, however, to be such as they are described by the opposite counsel, they cannot prevail over an express law of Congress. In this case, there can be no denial that the plea tendered an issue in fact; and all trials of issues in fact must, says the judicial act, be by jury. 2nd. But it is not necessary to insist further on this ground, since a true construction of the Rhode Island law itself, must give the assessment of damages to a jury. The law says that, in certain cases, 'damages shall be enquired into and assessed by the court, or otherwise, by a writ of enquiry, at the discretion of the courts.' If, then, discretion here means a found legal discretion, and not mere will, whim and caprice, it must be applied to a discernment and corresponding allotment of the cases, in which the law authorises a court to fix the quantum of debt, and in which it demands the interference of a jury for the assessment of damages. The opposite construction leads to the absurdest consequences. The Judge might, at pleasure, submit a promissory note to a jury for the mere calculation of interest; and undertake himself to assess the damages in an action for a libel, when judgment has been given on demurrer for the plaintiff. In the latter instance, he would be obliged to try the truth of the allegation and the credibility of the witnesses, and to decide the extent of the injury which the libel has produced; and if a judgment thus preposterously rendered should be brought hither, this court would be bound to affirm it: But there is surely no case, consistently with the scope of the judicial act, where the Circuit Court can decide a point of law, without affording an opportunity upon the record, for its being examined, affirmed, or reversed on a writ of error. In equity causes, it is provided, that the facts on which the decree of the Circuit Court is founded, shall be made to appear upon the record; and in common law causes the principle equally applies, that a Judge ought not to be allowed to travel over ground, where he can never be traced. Then, if the discretion mentioned in the Rhode Island act is a legal discretion to ascertain the distributive jurisdiction between Judges and Juries, and not an authority for the former to blend and usurp the powers of the latter; and if the Judges in this case have decided what the Jury ought to have assessed; it is an error in point of law, which this court is competent to correct. Whatever may be the practice of the lawyers of Rhode Island, it is but a construction of the law, and not the law itself; and if it is an erroneous construction, this court, so far from being bound to adopt, is bound to reject, it. Nor is the error cured by any statute of Jeossaile. The case from 7 Vin. Abr. p. 308. pl. 24. only shows that the want of a formal writ of error was cured, where the damages appeared to have been, in fact, assessed by a jury: but there is no reason in the case itself, or in the cases there cited, that if damages had not been assessed at all, or had been assessed by an improper tribunal, the error would not be fatal.
 
 
 14
 For the Defendant in error. 1st. Error assigned. It will be proper to premise, on general principles, that great difficulties must have arisen in organising the Federal Courts, so as to prevent an injurious clashing with the jurisdiction and practice of the various State Courts. From these difficulties there could be found no other mode of escaping, than by adopting, for the government of the Federal Courts, the same law and practice that prevailed in the respective States, in which those courts, from time to time, exercised their functions. The policy of the measure was likewise supported by its tendency to make the new government fit easy on the public mind, and to facilitate the administration of justice throughout the Union. For, as the law and forms of the respective State Courts had been adopted in order to accomplish substantial justice, according to the peculiar and local circumstances of each State; and as the people were content under the operation of those municipal regulations; it was natural to presume, that by adopting the same rule for the Federal Courts, the same salutary effect would be produced. But, on the other hand, it is obvious that any project for a general system of jurisprudence, co-extensive with the Union, could only have engendered discontents, and must have been abortive. To have attempted a theory of law and practice entirely novel, would have occasioned endless perplexity; and to have superseded the settled practice of some States, in order to introduce the practice of others; to compel, for instance, the lawyers of Massachusetts, to study and enforce the practice of the lawyers of South Carolina, would have occasioned endless jealousy and inconvenience. From these considerations the Congress wisely enacted, 'That the laws of the several States, except where the constitution, treaties, or statutes, of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply.' This adoption of the State laws, extends as well to the unwritten, as to the written law; to the law arising from established usage and judicial determinations, as well as to the law created by positive acts of the Legislature. And the act for regulating process, in language equally general adopts 'in each State respectively, such forms and modes as are used or allowed in the Supreme Courts of the same*.' The only question, therefore, to ascertain the legal correctness of the present record, is what are the laws and modes adopted by the State of Rhode Island, in relation to the controverted points? It is immaterial, how far the answer shall be inconsistent with certain dogma of the English common law, or at variance with the municipal regulations of any other State; it is enough to show that such are the laws and modes of Rhode Island, and that they are competent to all the purposes of justice.
 
 
 15
 With respect, then, to the assignment of error, because there was a discontinuance of the suit, a reference to the uniform practice of Rhode Island, must furnish a decisive refutation. Both in the Court of Common pleas, and the Superior Court of that State, the Court proceeds to call the parties in the actions depending on the Docket. If either party neglects to appear, in whatever state of the pleadings, his non-appearance is noted by the clerk, and judgment is rendered for the other party. If, as in the present instance, a plea has been pleaded; and, on calling over the Docket, the Plaintiff appears, and the Defendant does not, the judgment is entered for the Plaintiff without regarding the plea. If, on the other hand, the Defendant had appeared, and the Plaintiff had not, judgment would have been entered, in favor of the former, for costs. But, if both had appeared, whenever called by the Court, the similiter could be entered at any time, and it is usual to enter it at the time of qualifying the Jury. Even, however, where an issue has been regularly joined, the Court never proceed to try it, unless both parties appear; but enter judgment, as above stated, against the delinquent.* Thus, it is plain, that the non-attendance of the Defendant, is considered in the practice of Rhode Island as an abandonment of his plea: Nor is the practice without sanction from the books of English law; which show how a departure of a party in despite of the Court, will be recorded, and how in almost any stage of a suit, it may be a ground for rendering judgment against him. 7 Vin. Abr. page 450. pl. 3. 5. 11. Ibid. p. 473. pl. 10. Ibid. p. 474. pl. 19. Ibid. p. 476. pl. 7. Ib. p. 487. pl. 2. 1. Stra. 267. It is material, too, that the judgment is expressly rendered upon the Defendants making default. 5 Com. Dig. 11.
 
 
 16
 2nd. Error assigned. The allowance of damages only appears on the nota bene annexed to the record, which was an act of supererogation on the part of the clerk, and ought to be treated as mere surplusage. If, however, the Court were right in assessing the damages themselves, the assessment stands in the place of a writ of enquiry; and surely the principles on which a Jury give their verdict, can never be the foundation for a writ of error. Bills of Exchange and Protests are coeval with the 13th, century; and from the time of introducing a Protest to the present day, its only use has been to enable the drawer of the protested bill to take his funds out of the hands of the Drawee: but if no funds were in the hands of the drawee, then the fate of the bill must have been anticipated, no injury can be done to the drawer, and no notice will be necessary. It is true, that if the Drawee had failed with effects in his hands, between the time of the bills becoming due, and the time of protest, the Drawer would be discharged from any responsibility to the holder of the bills; but this fact, operating as a discharge, must be proved on the part of him, who wishes to take advantage of it; since prima facie, whatever may be the date of the protest, the drawer is responsible for the amount of the bills.* Ld. Raymond 12 Mod. 15. Show. 317 Con. B. of E. 9. I Term Rep. 405. Dong. 55. 654. But, independent of this general principle, the bills were duly protested, in time and manner, according to the law of merchants; and as the Rhode Island act does not designate any particular process of protest, that law must have been contemplated as furnishing a rule to decide the question. It is manifest, then, from all the authorities as well as from the reason of the case, that in order to be duly protested according to the law of merchants, it is not necessary to be done within the three days of grace, or any other specific term. The usances on Bills of Exchange differ, in different countries; and the case in Showers' Reports p. proves that a bill may be duly protested even 30 days after it has become due, if the drawer does not show, that he has sustained some damage by the delay.
 
 
 17
 3rd. Error assigned. It may be thought by some to be a subject for regret, that Rhode Island has not discovered the superior merits of the systems resting on the English common law, or invented by the jurisprudential skill of her sister states: but, as it has so happened, it will not be disputed, that within her jurisdiction whatever is her law, and not what is the law of other countries or states, must furnish the rule for decision. On the cases in which there exists a necessity of employing writs of enquiry, the diversity of theory and practice has been great, at different periods of juridical history, and at different places, influenced by the principles of the British laws. In some of the States, writs of enquiry are executed on every occasion, even to fix a mere computation of interest, but in New England, and especially in Massachusetts and Rhode Island, a writ of enquiry never issues, but at the request of the parties, or by the discretion of the court, in whose presence it is invariably executed. No language can be more forcible to exclude the opposite construction, than the language of the Rhode Island act, which declares, 'that in all cases where judgment shall pass by default, etc. where damages are to be enquired into and assessed, it shall be done by the court, or otherwise, at their discretion.' The practice founded on this law, and co-eval with it in commencement, furnishes the best exposition. Thus, the judges assign a day after every term, to assess damages in defaulted cases; and, however preposterous it may be deemed by those who practice upon another plan, it is not the less true, that they constantly exercise the power of assessment in trover, in cases of special contract, and even in actions of slander. Suppose that the statute had said, in explicit terms, the court shall assess damages, and not a jury, could a writ of inquiry be issued? And if the Legislature could give the jurisdiction to the court, the uniform construction that they have given it, except where a writ of enquiry is awarded by their own discretion, or requested by a party, ought not to be arbitrarily rejected. Then, if the State Court had the power, the Circuit Court sitting in Rhode Island, also, possessed it; and, in their discretion, were bound either to exercise it themselves, or to refer it to a jury. Neither party asked for a writ of enquiry; but, in the words of the record, 'the cause being submitted to the court,'* the court saw no more reason to issue a writ of enquiry to ascertain the damages specifically given by law, than to ascertain the interest at the legal rate; and after the judgment by default, nothing could be submitted to the court, but the damages. This, therefore, was the matter tried; and it sufficiently appears, without the aid of the excrescent nota bene. Besides, on this point, as well as on the point of discontinuance, the English authorities countenance the Rhode Island law and practice. Thus, on a demurrer in law, the justices may award damages for the party by their discretion, or award a writ to enquire of damages at their election. 7 Vin. Abr. p. 301. pl 4. Where judgment is by default, the court may give the damages, without putting the party to the trouble of a writ of enquiry. Ibid p. 308. pl. 22. The court may not only assess damages originally, but increase the damages previously assessed by a jury. Ib. p. 270. pl. 7. 9. It is the course of the court to give interest for damages upon a single bill, or bills of exchange, etc. and there needs no writ of enquiry. Ibid. p. 307. pl. 16. Nay, a writ of enquiry is considered, in some cases merely founding in damages, as a mere instrument to inform the conscience of the court, 'who, if they please (says Chief Justice Wilmot) may themselves assess the damages.' 3 Wils. 61. 2 Wils. 244. S. P. The modern cases, likewise, show the latitude to which the court extend this part of their jurisdiction; and it is the established practice to refer it to the Prothonotary, to ascertain damages and costs, and calculate interest on a promissory note, or bill of exchange, after judgment by default. H. Bl. 252. 541. 559. 4 T. Rep. 275. Bailey on B. of E. 66. 67. Appendix 5. Kid on B. of E. 155. But, after all, when judgment has been entered by default, the want of a writ of enquiry is aided by the statutes of Jeoffaile. Fitz. 162. 3. 7. Vin. p. 308. pl. 24. 2 Str. p. 878. S. C. 2. L. Raym 397. S. P.
 
 
 18
 On the 13th of February, 1797, Wilson Justice, delivered the opinion of the court.
 
 
 19
 By the Court: We are unanimously of opinion, that under the laws, and the practical construction of the courts, of Rhode Island, the judgment of the Circuit Court ought to be affirmed.*
 
 
 20
 With respect to the entry of this affirmance, interest is to be calculated to the present time, upon the aggregate sum of principal and interest in the judgment below; but no further. We cannot extend the calculation to June Term next, when the mandate will operate in the Circuit Court, as the party has a right to pay the money immediately.
 
 
 21
 The Judgment affirmed, with single costs.
 
 
 
 *
 Paterson, Justice, The value of foreign money, generally speaking, is uncertain; but it may be rendered certain by adopting the coin and fixing its value by law. There was a resolution of Congress adopting the pound sterling and fixing its value in dollars: and the value of the principal foreign coins has been fixed by an act of Congress (of 4th August, 1790, f. 56. p. 230.) so far as relates to the payment of duties.
 
 
 *
 See the acts of the 29th of September 1789, and 8th of May, 1792.
 
 
 *
 At the suggestion of the Court, Mt. Barnes reduced this statement of the practice of Rhode Island to the form of a certificate, and filed it in the Clerk's Office.
 
 
 *
 Chase, Justice. You surely need not labour that point. The Drawer would not be answerable for any thing not for the principal and of course, not for the damages, if the Payee had not done his duty: but what discharges the Drawer, he is surely bound to show, and not his adversary.
 DEXTER. This is not the ground of our argument: we contend that the Payee is not entitled to damages under a positive law, because the Bills have not been duly protested within the meaning of the law.
 
 
 *
 Paterson, Justice. Is it the usual way of making up a record, where neither party demands a writ of enquiry, to say the cause is submitted to the court?
 Barnes. Yes: It is the constant practice.
 
 
 *
 Chase, Justice, observed, that he concurred in the opinion of the court; but that it was on common law principles, and not in compliance with the laws and practice of the state.